IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOVAN WILLIAMS,

                Plaintiff,

   v.

                                         OPINION and ORDER

AUSTIN SCHLACTER, TIA CHENTNIK,
BROOKE STEINGRABER, SGT. NGUYEN,               23-cv-708-jdp
LT. HOFFSTATTER, JEREMIAH PHIPPS, and
JOHN DOES,

                Defendants.

---

Pro se plaintiff Jovan Williams, a prisoner at Columbia Correctional Institution, filed this civil lawsuit against prison staff. He alleges that they violated his rights under the Fourth and Eighth Amendments by subjecting him to two strip searches for suspected contraband, which was never found. Dkt. 1. He has been permitted to proceed without prepaying the filing fee.

Williams's complaint is before the court for screening under 28 U.S.C. § 1915(e)(2) and § 1915A. I must dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. *Id.* In doing so, I must accept Williams's allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Williams has not alleged sufficient facts to show that his constitutional rights were violated, so I must dismiss his complaint. But I will allow him to submit an amended complaint if he believes there are additional facts, consistent with those already alleged, that would state a claim under the constitutional standards discussed below.

ALLEGATIONS OF FACT

The events in the complaint occurred at Columbia Correctional Institution (CCI), where Williams was incarcerated. The defendants are all correctional officers who worked at the institution.

On September 4, 2022, Williams was housed in Cell 48 in the Restrictive Housing Unit, where he was on observation status. His only property in the cell was a security mat. Williams had placed his mat in the trap door of his cell, which was not allowed. Defendants Chentnik, Steingraeber, and Hoffstatter came to Williams's cell, removed the mat, and secured the trap.

Shortly afterward, Chentnik told defendant Schlacter that Williams had grabbed her arm and managed to remove an aluminum bracelet from her wrist as she had been securing the trap. A team comprised of defendant Nguyen, Schlachter, Phipps, Steingraber and Doe defendants then came to Williams's cell and directed him to get on the ground and not resist staff. Steingraber recorded the incident.

The defendants conducted a staff-assisted strip search of Williams, focusing on his buttocks, but they did not find Chentnik's bracelet. This was humiliating to plaintiff because it was done "in front of everybody in the observation area." Dkt. 1, at 6. Williams was then placed in a restraint chair and taken to a programming cell, where he was questioned by Schlachter. (Meanwhile, staff searched Williams's cell, but they didn't find the bracelet.) When Williams denied that he had the bracelet, Schlachter got "extremely mad and said we go see."

Defendants Does, Schlachter, and Chentnik then brought Williams to a different programming cell, where they strip-searched him again. Chentnik recorded the search. Williams was humiliated because the search was conducted in front of a female officer and because the search was focused on his buttocks and anus. (The court infers from Williams's

2

reference to a nurse that this may have been a body cavity search, but that is not clear from the complaint.) The bracelet was never found. Chentnik filed a conduct report against Williams for assault and theft, stating that Williams grabbed her arm and took her bracelet while she was securing the trap on his cell. Williams did not contest the report.

ANALYSIS

Williams alleges that defendants violated his constitutional rights when they strip-searched him or when they failed to intervene to stop others from violating his rights during the searches. When it comes to strip-searches, convicted prisoners have rights under both the Fourth and Eighth Amendments. *Henry v. Hulett*, 969 F.3d 769, 776–785 (7th Cir. 2020). I will consider Williams's claims under both amendments.

**A. Eighth Amendment**

The Eighth Amendment safeguards convicted prisoners against the use of strip-searches that are subjectively intended as a form of "punishment" or "motivated by a desire to harass or humiliate." *Henry,* 969 F.3d at 781. To state an Eighth Amendment claim, Williams must allege facts to suggest that (1) there was no legitimate security need for the search; or (2) the search was conducted in a harassing manner, intended to humiliate him and inflict psychological pain. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). "[Strip] [s]earches are penologically justified when reasonably related to finding contraband that threatens the safety and security of the prison." *Chatman v. Gossett*, 766 F. App'x 362, 364 (7th Cir. 2019).

Williams alleges that both searches were conducted to look for the bracelet that Chentnik said Williams removed from her wrist as she was securing the trap on her cell. Although Williams notes that the bracelet was never found, I do not understand him to be

3

saying that Chentnik lied; after all, he did not contest the conduct report charging him with assault and theft. This suggests that prison staff had a legitimate reason to believe that Williams had taken Chentnik's bracelet. Further, Williams does not allege that his alleged possession of the bracelet raised no security or safety concerns, such as preventing inmates from having property that could be fashioned into a weapon or a tool for self-harm. So I cannot reasonably infer that the search served no legitimate purpose. "It is well established that strip searches of inmates performed for security purposes are reasonable as a general matter." *West v. Radtke*, 48 F.4th 836, 853 (7th Cir. 2022).

As for the manner of the searches, Williams has not alleged facts from which to conclude that they were intended to humiliate him, to inflict psychological pain, or was otherwise conducted in a reasonable manner. All strip searches are inherently demeaning and humiliating to a certain point; something more, such as "ribald comments," inappropriate explicit gestures, or sexually provocative acts, is needed to establish a constitutional violation. *See, e.g., Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (finding inmate sufficiently stated Eighth Amendment claim where those things had been alleged). Williams says the first search was humiliating because it was conducted in front of "everybody" in the observation area. But as he admits, the first search was conducted in his observation cell. To the extent that other inmates may have viewed it, that viewing appears to be incidental and not done deliberately to humiliate him.

Williams says the second search was humiliating because it was focused on his buttocks and conducted in front of a female correctional officer. Strip-searches conducted in front of prison officials who are members of the opposite sex, if done in a humiliating manner, may rise to the level of an Eighth Amendment violation. *Chatman v. Ill. Dept. of Corr.*, 685 F. Appx. 487,

4

489 (7th Cir. 2017) (citing *Calhoun*, 319 F.3d at 939). But again, Williams doesn't say anything to suggest that the strip search was conducted in a way intended to humiliate and inflict psychological pain. He does not allege that the officers made rude comments during the search, were violent, or took any other actions supporting an inference that they engaged in gratuitous degrading conduct. And recording a strip search does not necessarily violate the Eighth Amendment. *See Fillmore v. Page*, 358 F.3d 496, 500 (7th Cir. 2004) (stating that a policy of recording strip searches may "protect guards and prisoners alike."). So I will not allow Williams to proceed on an Eighth Amendment claim.

B.  **Fourth Amendment**

The Fourth Amendment safeguards the right to be free from unreasonable searches. The court of appeals has concluded that the "[t]he Fourth Amendment protects a limited right to bodily privacy for convicted prisoners," which includes protection from unreasonable strip searches. *Henry*, 969 F.3d at 779–80, 784. To prevail on a Fourth Amendment unreasonable search claim, a prisoner must show that the search was objectively unreasonable in light of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

Williams's complaint does not state Fourth Amendment claims. As for the searches themselves, strip searching an inmate is reasonable under the Fourth Amendment if correctional officers have reasonable suspicion that the inmate possesses contraband. *Brown v. Polk Cnty., Wis.*, 965 F.3d 534, 539–40 (7th Cir. 2020). As just discussed, nothing in the complaint supports an inference that either search was conducted in a way or in a place that was objectively unreasonable. And the scope of the intrusion seems justified in light of the strong suspicion that Williams took Chentnik's metal bracelet.

This complaint does not state a claim for which relief can be granted. Nevertheless, Williams may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018).

## ORDER

IT IS ORDERED that:

1. Plaintiff Jovan Williams's complaint is DISMISSED without prejudice for failure to state a claim upon which relief can be granted.

2. Plaintiff may have until February 19, 2024, to submit an amended complaint.

Entered January 29, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge